Our first case is Gillaham v. Supreme Court of the Virgin Islands, No. 23-2478. We'll hear from the appellant first. Good morning. May it please the court? Joan Gillaham, I would like to reserve five minutes of my time. That'll be granted. The District Court erred in dismissing this case and denying the motion for leave to amend as the proposed second amended complaint was not futile or inequitable. Third Circuit precedent requires the District Court must offer amendment in civil rights cases irrespective of whether it is requested when dismissing a case for failure to state a claim unless doing so would be inequitable or futile. Fletcher Harley v. Potey. The District Court failed to review the proposed second amended complaint and thus failed to presume the allegations of the complaint were true. Instead, the District Court erred in presuming appellee's assertions were true and did not draw all inferences in favor of appellant. All of the appellees have continuously made known for false arguments to this court and the District Court. The appellees have the burden to prove immunity and they have failed to meet their burden. Professor Gillaham, I'd like to ask you a question if I could. Do we have jurisdiction over this case? And I ask the question in the sense that you're challenging a bar proceeding and this case reminds me a lot of the second case in the Rooker-Feldman doctrine, the Feldman case in which two appellants in that case were challenging the action of the the Superior Court of the District of Columbia. So tell us about our jurisdiction. You're just making a challenge to what the Virginia Supreme Court did. Right, this is not in regards to an ongoing, this is not a disciplinary case. This is an administrative attorney registration case and the whole crux of this case is the constitutionality issue with the ARS rule, the Attorney Registration Statement rule and the CLE rule. Those are the issues. Are you making that challenge as a facial one or as it applied to you on the 2020-2022 questions? They're on their face. They're unconstitutional and then Yik Wu is the case law that says that even though it's facially neutral on the Attorney Registration Statement, it's being enforced unconstitutionally because it's targeting individuals by race and residency. And the District Court of Appeals versus Feldman said that the U.S. district courts have subject matter jurisdiction over general challenges to constitutionality of state bar rules promulgated by state courts in non-judicial proceedings. And that's exactly what this situation is. I'd like to ask you a follow-up question about that. So then as I understand it, what you're seeking is perspective with respect to what we're just discussing is prospective injunctive relief. Is that correct? Correct.  Can you tell me precisely who you seek that relief from and exactly what relief you sought? And then can you point me to where that exists in your second amended, proposed second amendment complaint or the first amendment amended complaint? The asking for the perspective relief from the Virgin Islands Supreme Court with the ARS rule because the ARS rule at this point in time does not provide for any notice. It provides for automatic suspensions, no hearing, no opportunity for counsel. And that's why it's unconstitutional on its face is because it's providing and these are on open permanent court docket that cannot be expunged. So, and you have the pecuniary interest of the adjudicators in that they receive the funds for these ARS fees. And it's not, it specifically goes to them and the funds are graduated. Again, they're not providing notice at the beginning and then it continues to graduate and then they're still not providing notice. There's this whole incentive to let it go as long as it can, because the more money that they will gain. Precisely which defendant or proposed defendant would you say, are you identifying as the defendant, as the official who should be named with respect to this particular relief that you see? The two, well, the two relief, the two defendants would be the Virgin Islands Supreme Court and defendant Bailey Rocha. I've also asked to add defendant Hodge in my second proposed amended complaint and that he would also provide the relief if he was allowed to be added as well. Another jurisdictional question, an article three jurisdictional question I'd ask you about is the district court said that your claims were not right. Why in fact are your claims right to give us jurisdiction? The claims are right because of, well, first of all, you know, in Gibson v. Berryhill, they talk about, you know, that you can come to a federal court when you can't get timely relief from the lower, from the state court or in this case, the territorial court. My ARS case, my 2020 ARS case has now been pending for four years. I requested a hearing. They refused to give me a hearing. They will not do anything with that case and it is sitting there four years on the open court docket and I can't get timely relief. So that's one of the other pieces of this as to why I'm bringing it to the court, to the federal court. And again, that's Gibson v. Berryhill that says that I have the authority to, or the ability to do that. But you got your bar card. What's left? Well, they refused to, that's still open and that creates harm for me while it's still open, that it's never been adjudicated. You're talking about the 2020 order? You're talking about the order from 2020? Correct. The 2020 ARS case is still open and then after that in 2022, they came after me again and now they're after me again. So it just never ends. They're constantly coming after me for things when I'm in compliance. That's the whole thing. I was always in compliance with the 2020 ARS by the timely deadline in January of 2020. I was in compliance with the PO box thing that they developed specifically for me and I've used the PO box all along. Is the address requirement argument moot now? You noted that the address issue has been resolved already. So is that really before us? The 2022 one has been resolved at this point in time. But we don't know what they're going to do in 2025. That's the whole thing is that it's constant. And then they've been pursuing another avenue trying to get discovery from this case. While this case was on appeal, which is confidential, which I can't go into. But it's just they target specific individuals and then they never stop. And that's the whole problem is I'm one of them that's targeted. There are several other individual attorneys that are targeted and they never stop. Can I ask you another question? Your adversary points out that you forfeited arguments regarding qualified immunity and I think as well rightness. How do you respond to that? That wasn't raised in the district court by you. I did raise the response to qualified immunity. And it's in there with the whole thing with you. Whoa. What happened was the district court did not read my proposed second amended complaint and didn't read my response, my brief, because it was in there. It was very clear in there that I discussed about qualified immunity. And the only thing that was missing was the heading was off of that section that said that and I discussed about Yick Woo and how that that's one of the pieces of this that they're. That's the discriminatory enforcement of the facially neutral rule. I've also discussed consumers union. I've also discussed Bernard, which these guys are the defendants of, which is a clearly established rule that they know of because they were the defendants that does not allow for residency requirements, which is basically what this is doing is implementing de facto residency requirements because the attorneys that are targeted in it in its enforcement are predominantly off island attorney. And that's been dictated. I've put that very clearly in all of my documents that shows the percentage of them. I also talked about the holler cases. Another case that they're very familiar with. They were, again, the defendants on that case. That's a 1st Amendment case, which is part of this case because of them involved in the germane and non-germane activities, the germane activities, and forcing to affiliate ourselves with issues that violate the 1st Amendment and including political activity, sending letters. The Virgin Island Bar has sent political letters to the to the United States. And they knew that it was not something that they should be doing. And it's all documented in their bar minutes. They're you're you're over time now. So I will give you a chance to take up your rebuttal. OK, we'll hear from the appellee now. May please the court. Timmy is a burger for the Virgin Islands Bar Association. Your honors, this court should affirm for a straightforward reason. Judge Jordan dismissed Miss Gilliam's claims against the bar and denied her leave to amend because she failed to meaningfully respond to the bar's arguments below. Judge Jordan correctly noted that Gilliam's failure to do so below had essentially conceded those arguments as they pertained to the bar. And we have essentially the same issue now on appeal. As to the bar, Miss Gilliam's brief addressed younger and it addressed qualified immunity, neither of which applied to the bar. Qualified immunity applied to the individual defendants. She was trying to bring into the case and that she had sued while a younger dealt with the ongoing Supreme Court proceeding over the A.R.S. statement. She failed to raise any issue that dealt the bar. So she's now the forefront of those issues on appeal. And the court should affirm. Your honor, this case is a concern of the bar is about Miss Gilliam's grievance with a C.L.E. regulation that grants pre-approval to C.L.E. if it's approved by 12 states. Miss Gilliam's home state of Texas does not grant pre-approval to Virgin Islands C.L.E. So the Virgin Islands decided not to grant pre-approval to Texas C.L.E. Now, Miss Gilliam believes that. Mr. Anzenberger, do you agree that we have subject matter jurisdiction? Your honor, as it concerns the bar, I do believe there is subject matter jurisdiction. Your honor mentioned Rooker Feldman. I think that would concern more of the Supreme Court's underlying disciplinary proceeding. Okay. Yes. So the two claims that Miss Gilliam originally brought in, what was her live complaint below dealt with that C.L.E. regulation. Both were 1983 claims. And there's essentially two key orders that are under review today. The first is the order granting the bar's Rule 12C motion. The live complaint brought those two 1983 claims. Count one was an equal protection violation. Count two was a privileges and immunities violation. Now, what we argued below and what Miss Gilliam has not responded to or raised or challenged on is one, that the bar is not a person for purposes of 1983. Two, the bar didn't actually commit the wrong that Miss Gilliam is complaining of. Only the version of the Supreme Court has authority to enact C.L.E. regulations. The bar can propose them, can petition for approval, but it's ultimately the Supreme Court that has authority to enact them. It's actually the Supreme Court that has authority to even change the bar association's bylaws. Third, we argued that the bar was immune under the doctrine of quasi-legislative immunity. And I think that's particularly apt now, given the court's case in Flannery versus Hodge that came in after the briefing was completed in this case. And we had other arguments, most specifically that the discrimination claims simply weren't plausible. Judge Jordan held that Miss Gilliam, even after giving her an opportunity to fully brief these issues, failed to meaningfully respond. And on appeal, she failed to raise and challenge them. The second order under review is the court's decision not to grant Miss Gilliam leave to amend. The proposed second amended complaint, the most recent one that she submitted when Judge Jordan gave her a final opportunity to justify her... Yeah, he asked for a claim-by-claim, defendant-by-defendant allegations. Yes, Your Honor. And we were looking for her to do so. That way, we would have a really good opportunity to actually identify with this enormous proposed second amended complaint. What are the claims? Who are they targeted to? And we didn't see that in the briefing below. And neither did Judge Jordan, which was one of the reasons why he chose to deny her leave to amend. She brought a litany of new claims to add on. The proposed amended complaint concentrated on the CLE regulation. The proposed second amended complaint was essentially going to change the entire nature of the litigation. She wanted to bring First Amendment claims, a conspiracy claim. She wanted to bring in current and past members of the bar. And for that reason, not only were the claims futile, but it would have completely changed the nature of the litigation and prejudiced those parties, particularly those parties that were going to have to—the bar members that were going to have to go out and find individual counsel and try to wrangle this new complaint. So does Younger abstention apply to your client? It does not, Your Honor. Younger—and the way I appreciated Judge Jordan's decision was he was discussing that ongoing Supreme Court case that Ms. Gillum actually just finished talking about over that ARS statement. As it concerned the bar, Judge Jordan noted our arguments about 1983, the plausibility of the discrimination, and those items and just found that there was no meaningful response to them. But yes, Younger would apply to the Supreme Court. Qualified immunity would apply to the individual defendants. And because those are the only two arguments we see in Ms. Gillum's principal brief on appeal, we think under this Court's decision on BARNA that they've forfeited, and we just do not see any truly unusual circumstances or court circumstances for this Court to consider them at this point. If there are no questions from Your Honors, I'll return the balance of my time to the Court. Okay. Thank you. And we'll hear from Ms. Gillum. Good morning, Your Honors. Good morning. I am Pamela Lynn Colon, and I am representing the Virgin Islands Supreme Court in this matter. As Your Honors are aware, this entire dispute arose back in 2019 when Attorney Gillum failed to timely file her ARS and pay for her fee. That's the first thing that happened, and everything cascaded from there. Although she claims she's had no notice, she was given notice by the rule itself and was clearly aware because she acknowledges she filed timely in 2015, 2016, and 2017. She then was told when she paid her ARS and filed it on April 17, 2019, that she still had a late fee that had to be paid. She got a receipt in November of 2019 saying she still owed this payment. She then received the late fee payment, or she actually made the late fee payment in January of 2020, but she received a rejection notice about that. So she got notice again on January 21, 2020. On February 12, 2020, excuse me, May 12, 2020, she received a notice letter from disciplinary counsel saying, hey, you're- When did she get the rejection notice? She got that on January 21, 2020. Why? What was that? There apparently was a problem with the payment system. Now, that was on the system's fault. It wasn't her fault. But she was made aware that there was an issue and had that- So she tried to pay it? She tried to pay. She did. And actually, she did pay on January 17, 2020. But she had this notice that there was a problem with her payment, not on her fault. So she ended up getting suspended in May because of a problem that wasn't hers? She did not get suspended in May. She got a notice letter from disciplinary counsel. And at that point, she did not respond to that letter. She also got a notice- Oh, wait, she got a notice- Compliance in July. Let's stop there. She got a notice in May about something in January that wasn't her fault?  Okay. She got part of that mass order that was entered in 2020?  Okay. But ultimately, she never was suspended. But was that ever corrected? Was there ever an order entered by the court correcting the May order saying that she was in the fault? I'm glad you raised that. There has been no order entered yet. That case is still pending. But it is pending on the basis of the motions that have been filed by Attorney Gillum. Because disciplinary- So why isn't Attorney Gillum correct that because of the tendency of that question, she has to mention it on her legal malpractice application on an annual basis? And that's an injury. Disciplinary counsel has moved to withdraw that motion. So there was never a suspension at all. There's never been a suspension. Moving to withdraw it and getting the court then or an order granting the motion to withdraw it are two different things. I don't disagree with that. But there's never been an order of suspension. Her license has never been suspended. It just didn't happen. And in fact, she got her bar card. And her license, she's in good standing. But there's that order out there. There's still the May 20th order floating around. There is. There's a notice order.  There's a notice order. There's a notice order. That's all that's out. You'll agree that that's still out there. It is because she has filed various motions that have kept the case alive. And I understand that too. But she didn't file the notice order. She has filed motions. Agreed.  So there's a lot of controversy. There is. There is a lot of controversy. There's no doubt about that. And that's part of the problem here. Because there is a lot of controversy. I agree with your honor's concern that there probably is not jurisdiction here. And that the district court did not have jurisdiction. And that this court doesn't have jurisdiction either. On what basis? On the basis that there's still a lot of controversy between them. And this case is not right for decision in a district court. If the district court had otherwise. Are you arguing that because of Younger? Yes. Yes. But getting past the jurisdictional issue. Ms. Attorney Gillum has definitely waived both in the district court and here before the third circuit any argument with regard to her claims that that her case has the liability. Do you mean she waived it or she forfeited it? The district court judge Jordan found that she actually conceded and waived. He recited to the Beezer case in his order for the proposition that she had actually waived those arguments that she did not address. And those arguments had to do with sovereign immunity, qualified immunity, and absolute immunity. She also never specifically addressed, which he had asked her to do in the context of the consumer unions case, whether or not the court was acting in a legislative, judicial, or other capacity. And she didn't address that either. Counsel, as I understand it, she's got damages claims as well. She does. What would what happens to those damages claims? Should they be stayed or dismissed? The damages claims that were brought in the viable complaint, or not the viable complaint, but the pending complaint, the one that was actually live, which was the First Amendment complaint, were against the court, which is not possible under 1983, where you cannot get money damages against the Virgin Islands or the Virgin Islands Supreme Court case. As far as that goes, that should be dismissed. With regard to the disciplinary counsel's office, that would be the same answer. With regard to the individual, there would be quasi-judicial immunity. And I think that that's probably something that the disciplinary counsel will address. But otherwise, yes, they absolutely have to be dismissed. They're not permitted. It's a sovereign immunity issue that is clear. And Judge Jordan specifically instructed her to find him case law that says that's not the case. And of course, she couldn't do that because it's not the case. Are you arguing that she also forfeited her request for prospective injunctive relief, or did she raise that? She did not raise that, and she certainly didn't address it. And it certainly wasn't in her original complaint, or in the First Amendment complaint, which is the one that was before Judge Jordan. And although she raised it in a general sense in the proposed Second Amendment complaint, she failed to, as was requested by Judge Jordan, to do a claim-by-claim, defendant-by-defendant analysis of what she wanted done and by whom, and to identify who was the authority, who was the official that could provide her that relief. And she never did that. And as my fellow counsel just mentioned, it made it extremely difficult to assess who was being directed to do what, because there was no specificity that Judge Jordan required. So although it was raised in the Second Amendment complaint, not in a manner in which could survive a motion to dismiss, which is what Judge Jordan ultimately found, and therefore he did dismiss her First Amendment complaint, and did refuse appropriately her request to file a Second Amendment complaint. Thank you, counsel. We'll hear from your friend. Thank you as well, and we request that the court affirm the decision of Judge Jordan dismissing this matter with prejudice. Good morning. I don't have a lot to add to what Attorney Colum just said, but I want to elucidate the point that in the initial status conference that we had with Judge Jordan, he kind of pointedly asked the appellant to make sure that she had all the right parties, and that the people that she was filing the action against were capable of providing the relief that she sought. So in addition to the waiver argument that I fully concur with, I also have the position that Attorney Bailey Rocha was never a proper party in this case, because she could never provide any of the relief that was being sought by the appellant. And even if she were a proper party, in her role as disciplinary counsel, essentially prosecuting disciplinary actions on behalf of the Supreme Court, she is subject to three absolute immunities, sovereign immunity, prosecutorial immunity, and quasi-judicial immunity. Is she subject to damages? She's not subject to damages on the ground, because as an officer of the government of the Virgin Islands, she cannot be held liable for damages. And she cannot be held liable for damages in her individual capacity either. Who does Bailey Rocha work for? She works for the Supreme Court. She's in charge of the Office of Disciplinary Counsel. She is, by title, the Chief Disciplinary Counselor. She also... I probably shouldn't have raised these to start with. She also, as a fallback, would have had qualified immunity, even if the absolute immunities did not apply. And throughout the... Assuming that... Okay, we'll get to that point you raised. Assuming that Ms. Gillum has properly raised the question of prospective relief against Bailey Rocha, what kind of immunity would she be entitled to? Well, I think she still gets the absolute immunity on that, because Ms. Gillum... In her individual capacity. She does have a suit to name her official capacity and in her individual capacity. On the individual capacity... I think she's immune in both capacities. And what form of immunity in her individual capacity? Well, I think she's covered by all three. Sovereign immunity, definitely quasi-judicial, and definitely quasi-prosecutorial. What about qualified? She's covered by qualified too, but only as a fallback, because that's qualified. The other immunities are, of course, absolute. And you can't get injunctive relief against a prosecutor on 1983 unless there's been a declaratory judgment entered or that one is unavailable. And she's never passed that threshold. She's never asked for the declaratory judgment. She's never said one was unavailable. It's nowhere in any of her plea. Is she acting in a prosecutorial capacity or an administrative capacity here? I think when she files a document with the court that impacts the ability of Ms. Gillum to remain in good standing, she's acting in prosecutorial capacity. The administrative capacity would only encompass... We're talking about perspective. I asked my question. It was as to perspective related. No, I think prospectively, that's the capacity she would be working in as well. The administrative part of it is handled by the Office of Bar Admissions, not by disciplinary counsel. Bar Admissions determines whether the ARS has been satisfied and passes the information to the ODC. And then the ODC takes action. And that applies to anybody who hasn't met the requirement of the ARS. All right. Bailey Roker does not review the documents administratively to determine that the payments have been made. That's separate functions. All right, thank you, counsel. Thank you. Now we'll hear a rebuttal from the appellant. In regards to the Virgin Island Bar, he said that I did not raise anything in my brief regarding the Virgin Island Bar. That is incorrect. I raised the Fitchett's case, which is the case that they also have referred to. And that's on pages three and pages 48. And it specifically states that the Virgin Island Bar does not have immunity. And it goes through all of the different tests with Fitchett, which is precedent in the Third Circuit, that they do not have immunity. They are not a governmental entity. Matter of fact, they're an unincorporated association. And they have falsely represented to this court that they are a nonprofit association. And that is incorrect. So let me ask you, the page references that you just gave us, are those in your brief before us or your brief before Judge Jordan? Those are in the brief before you.  And it's also in the brief with Judge Jordan as well. I can look for that page. But between things, I was trying to look for the ones that had for your case. Oh, you have a little bit of that. It was raised in Judge Jordan's case as well, the Fitchett's factors. I raised Keller. I raised Crow. And I raised Fitchett. And they've also raised Fitchett. So that's the one that we both have raised. But the court failed to do any kind of functional analysis or any kind of analysis on the bar's claims of immunity. And the court did not do any functional analysis on the Bailey Rocha's or the court's claims of immunity. And in regards to the prosecutorial versus the administrative, the whole thing is the ARS is administrative. All the other jurisdictions that have attorney registration, it's not handled by their disciplinary counsel at all. It's handled by administrative staff in the bar's office. Notice is given. It's not on a permanent docket. It's not entered on the court's docket. And it's not become a scarlet letter like it is for those of us in the Virgin Islands. So, and then on top of that, Bailey Rocha saying she just gets a list and files it. Wait a minute. If somebody else other than Bailey Rocha handles it, why have you named Bailey Rocha and request for prospective relief? She's the one who actually files it. And she's the one who she claims. Prospective relief. She's the one who claims it. She's the one who does it. And then she kind of gives different stories as to who's doing what. But at the end of the day, she's the one who has filed it. The other jurisdictions are the ones that are not the disciplinary counsel. I may have not made that 100% clear. The other jurisdiction that have an ARS, it's not even associated with their disciplinary counsel. That was my point on that. And in regards to declaratory judgment, that is in my second proposed amended complaint. There's a whole entire cause of action in regards to the declaratory judgment. So that was something that was part of the second proposed amended complaint. The last attorney was incorrect because that is part, it's at the very last section of my second amended proposed complaint. And again, my whole point with the immunity is the court needed to conduct a functional analysis to determine like Fogle and Odd and all these other ones to determine whether or not that there was immunity or not and what function they were acting in and not making this assumption that they automatically had quasi-judicial or quasi-prosecutorial just because of their title. That is third court, third circuit precedent that there is to be the functional analysis. My entire argument has been, it's not a consumer's union that they were engaged in enforcement activities and enforcement activities do not have immunity. That's my whole entire argument about the immunity issue. And that has been raised consistently. And Jordan, the district court also acknowledged that I had raised that, but he never addressed the issue. He recognized that I raised it, but never conducted any kind of functional analysis like this court has required that the district court. Judge, the district court asked for a claim by claim, defendant by defendant analysis on your part. He, how do you respond to his saying that didn't occur? If you look at my second amended proposed complaint, each cause of action has the name of each defendant under each cause of action. So it definitively ties each cause of action with the defendants that I'm seeking relief. And then at the end of each cause of action, it specifies what type of relief that I'm requesting. I am not requesting damages in official capacity that was in a previous, it's actually technically in the live complaint, but that was removed from all of my complaint, my second proposed amended complaint that was removed. And so that's not, I mean, technically it's live, but that was an issue that wasn't, that was removed. But yes, in my second proposed amended complaint, each cause of action underneath each one has their names as to which defendant it's applicable to. So it's claim by claim, defendant by defendant, just as the court had asked me. That was missing in my first, in the live complaint. So that was the change that I made. And the district court had asked me that I could amend the complaint as part of his brief. So my understanding was that that was all to be considered together, the brief and the proposed second amended complaint. So to me, and again, I had word limits. So that was the easiest, simplest, I thought way for the court to be able to definitively see which defendant went with each cause of action as they were raised in the complaint. And what relief was being sought for each individual defendant for each cause of action. So what, are you seeking damages at all at this point, just to be clear? I'm seeking damages. Just in their personal capacities? Pardon? Just in the personal capacities of the defendants? Right, in the individual capacity for 1983 claims, and for the Virgin Island Bar, I do not believe that they have immunity. Again, they're an unincorporated association and that was the fidgets factors. And so they would be, I have claims against them for damages as well. And the CLE, they're the ones who created, who came up with it. And they're the ones who enforce it. So they do have, that's why they're named in this, that they're not, they are a party to this because they're the ones who are enforcing it. They're the ones who are reviewing everything and making the decisions and providing them to the Virgin Island Supreme Court. So they- Judge Fisher's got a question, counsel. In listening to your summation here on rebuttal, it seems to me that the only remaining complaint you have, and I'm using complaint in a general sense, not an official sense of a pleading. The only remaining complaint you have is the lack of reciprocity with Texas CLE. Is that accurate? The issue with the CLE is that we're forced to have to associate, we have to do different things for how to obtain our CLE. Those of us that live in those 38 states, then those who live in the 12 plus the Virgin Islands. So- Counsel, could you respond to Judge Fisher's question? I don't want to know what you have to do, but I just would like an answer to your question, to my question. Is that the remaining complaint that you have? Well, I think it's more detailed of a complaint than that. So I would say yes, but I think there's more to it than that. Okay. All right. Okay, thank you, counsel. We thank all of the counsel in this case. We'll take the case under advisement.